UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PURCELL BRONSON and           : CIVIL NO: 3:CV-04-01899
LEON HARRIS,                   :
    Plaintiffs,        : (Judge Caputo)
   v.                  :
          : (Magistrate Judge Smyser)
C.O. LEEDOM, C.O. MARTIN,      :
C.O. SNOOK and SGT. KLINEDINST :
    Defendants          :

## REPORT AND RECOMMENDATION

On August 23, 2004, plaintiffs Purcell Bronson and Leon Harris, state inmates proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint.

The plaintiffs are incarcerated at the State Correctional Institution at Camp Hill (SCI-Camp Hill). The defendants named in the complaint are Jeffrey Beard, Secretary of the Pennsylvania Department of Corrections, Corrections Officers Leedom, Martin and Snook and Sergeant Klinedinst.

The plaintiffs allege the following facts in their complaint. On July 13, 2004, defendant Martin stated to plaintiff Bronson that he would get him back because Bronson had filed two grievances against him. On July 15, 2004,

defendant Martin's partner, defendant Leedom, issued Bronson a fraudulent misconduct report.  Defendant Leedom stated that he was issuing the misconduct because it would be too obvious if defendant Martin were to do so.  Defendant Leedom further stated that "we're going to make your life hell, you'll never graduate from this program."

On or about July 16, 2004, defendant Leedom handcuffed plaintiff Bronson during shower time and stated that he was going to give him a shower.  Defendant Leedom made Bronson face the wall and ran his night stick across Bronson's buttocks and struck Bronson's testicles causing Bronson substantial pain.  Defendant Leedom stated "remember New York."  Bronson took that statement as a reference to an incident in New York where police stuck a plunger up a black man's rectum.  Bronson did not bring this incident to the attention of prison officials because he was afraid that the situation would worsen.

On July 22, 2004, a disciplinary hearing was held concerning the miscount report issued by defendant Leedom to plaintiff Bronson.  The Hearing Examiner denied Bronson's request to have an inmate who would have corroborated Bronson's version of the events testify.  Bronson was sentenced to 45

2

days in the Restricted Housing Unit.  Bronson describes his
sentence in the Restricted Housing Unit as imposing an atypical
and significant hardship on him.

On July 25, 2004, defendant Martin resumed harassing
plaintiff Bronson by refusing to feed Bronson breakfast and
lunch.  Defendant Martin stated that it was just a matter of
time before Bronson would be found "swinging like prisoner
Kenneth Miller" with a noose around his neck, handcuffed and
shackled.  Defendant Martin further stated to Bronson that this
is Klan country, that we stick together here, that he doesn't
like smart ass black niggers, and that we are going to break
your ass real soon.  Bronson perceived those statements as a
threat to kill him.  Bronson alleges that he fears for his life
and that everytime the defendants pass his cell he expects them
to enter the cell and beat him to death.

Plaintiff Bronson is only being fed one meal a day.
Bronson alleges that the defendants are refusing to feed him so
that, as they say, he will be too weak to fight back when the
time comes.

Plaintiff Bronson is not receiving showers or exercise. Defendant Klinedinst stated to Bronson "if you go to the yard I'm going to fuck you up."  On July 26, 2004, defendant Snook obstructed Bronson's outdoor exercise by stating: "If you come out I'm going to punch you in the face.  Anytime I'm working, I'm going to get you.  I know you wrote my partner Martin up. I don't like that."   The plaintiffs allege that the defendants have assaulted numerous inmates when the inmates come in from the yard and are handcuffed behind their backs.

The plaintiffs allege that the defendants and/or John Does have twice assaulted plaintiff Harris, once on June 17, 2004 and a second time on June 18, 2004.  Plaintiff Harris is co-plaintiff in the case of *Bronson v. Horn*, No. 3:CV-03-0130 (M.D.Pa.).   Plaintiff Harris was told by John Doe guards: "We know Bronson is coming, let this be a warning to you and him, what to expect if you both keep litigating.  The next time we are going to kill both of you and cover it up, so think about that."

The plaintiffs allege that there are cameras in all other solitary confinement units within the Department of Corrections except the solitary confinement unit at SCI-Camp

4

Hill, and that the lack of a camera at SCI-Camp Hill allows brutality and racism to run rampant.

The plaintiffs allege that they can not file any more grievances because to do so would result in a beating.  The plaintiffs allege that they believe their lives are in danger from the defendants and their agents.

The plaintiffs allege that the defendants have bragged that their conduct was in accord with defendant Beard's policies, practices and procedures to break prisoners.

The plaintiffs claim that the defendants actions violated their rights under the First, Eighth and Fourteenth Amendments of the United States Constitution.  The plaintiffs are seeking declaratory relief as well as injunctive relief requiring the defendants to install cameras at SCI-Camp Hill and to transfer them to another prison with cameras until such time as cameras are installed at SCI-Camp Hill.

By an Order dated October 7, 2004, all claims against defendant Beard were dismissed.

On October 8, 2004, the plaintiffs filed a motion for a
temporary restraining order (TRO) or a preliminary injunction.
Also on October 8, 2004, the plaintiffs filed a brief in
support of that motion.   In their brief, the plaintiffs state
that, because of their litigation against prison officials,
plaintiff Harris has been assaulted and will be assaulted and
plaintiff Bronson has been threatened with imminent assault.
The plaintiffs further state that there is a history of
assaults on prisoners in the Special Management Unit (SMU) at
SCI-Camp Hill, where the plaintiffs are being held, and that
the SMU is known for the brutality inflicted on prisoners by
guards.  The plaintiffs state that they have set forth[1] nine
prisoners who have been subject to assault by the defendants.
The plaintiffs further state that there are no recording
cameras in the SMU as there are in other control units within
the Department of Corrections.  The plaintiff claim that they
fear for their lives.  The plaintiffs also state that in
retaliation for filing this case, the defendants and their
coworkers have seized two boxes of plaintiff Bronson's legal
materials.  The plaintiff are seeking an order from the court

---

1.  It is not clear what the plaintiffs mean when they say they
have set forth nine prisoners who have been assaulted by the
defendants.  The plaintiffs have not provided the names of those
prisoners and they have not provided declarations or affidavits
from those prisoners.

directing the defendants to install recording cameras in the
SMU, to transfer the plaintiffs to SCI-Fayette until such time
as cameras are installed in the SMU, to allow the plaintiffs
consultation time in the law library at least once a week, and
to return to plaintiff Bronson his two boxes of legal
materials.

By an Order dated November 19, 2004, we ordered the
defendants to file a response to the plaintiffs' motion for a
TRO or preliminary injunction.  At that point an attorney had
not yet entered an appearance for the defendants and it was not
clear whether or not the defendants had been served with the
complaint.  The defendants were ordered to file a response to
the plaintiff's motion within either: 1) fifteen days after
they are served with the summons and complaint or fifteen days
from the date of this Order, whichever is later; or 2) if they
waive service of the summons and complaint pursuant to
Fed.R.Civ.P. 4(d), within sixty days after the date on which
the request for waiver of service was sent or fifteen days from
the date of this Order, whichever is later.  The Clerk of Court
was directed to send a copy of that order to each of the
defendants at the State Correctional Institution at Camp Hill.

On December 1, 2004, the plaintiffs filed another motion for a TRO or a preliminary injunction and a brief in support of that motion.  This motion is substantially similar to the plaintiff's October 8th motion.  However, in support of this motion the plaintiffs also filed a declaration.  Although the declaration is signed by both plaintiffs it is clear that it was drafted by plaintiff Bronson.  Bronson states in the declaration that on November 11, 2004, defendant Leedom entered his cell, seized his Ramadan food and threw it on the floor, and stated that he would poison Bronson's food after the end of the Ramadan fast. *Doc. 19* at ¶1.  According to Bronson, since November 12, 2004 he has not eaten his morning or afternoon meals, which are served by defendant Leedom, because he believes the food may have been tampered with.  Bronson states that he eats only the evening meal.  Bronson states that the defendants and their agents have ratcheted up their harassment in that he is being denied showers, yard and he is not allowed to use nail clippers.  Bronson states that defendant Leedom is well known for falsifying misconduct reports and that he recruited Corrections Officer Kotula to issue him a bogus misconduct on November 11, 2004.  Bronson states that Superintendent Kelchner has failed to take any corrective action.  Bronson states that he assumes that Harris is going

8

through similar trials as he is two pod sections over from him but in the same building and under the defendants' reach. Bronson states that defendant Leedom continues to assault prisoners and is working his way to the plaintiffs who fear for their lives.

On December 22, 2004, the defendants filed a brief in opposition to the plaintiffs' motions for a TRO or preliminary injunction.

On December 29, 2004, the plaintiffs filed a motion entitled "Plaintiffs' Motion to Execute Injunctive Relief."  In this motion the plaintiffs contend that the defendants waived their right to contest their motions for a TRO or preliminary injunction by failing to timely respond to their motions.  The plaintiffs request that the court grant their motions for a TRO or preliminary injunction and direct their transfer to the Behavior Monitoring Program at SCI-Huntingdon.

On January 10, 2005, the plaintiffs filed a reply brief in support of their motions.

9

Before addressing the merits of the plaintiffs' motions for a TRO or preliminary injunction, we will address the plaintiffs' argument that the defendants waived their right to contest the motions by failing to file a timely response.  As stated before, the defendants were ordered to file a response to the plaintiffs' first motion within either: 1) fifteen days after they are served with the summons and complaint or fifteen days from the date of this Order, whichever is later; or 2) if they waive service of the summons and complaint pursuant to Fed.R.Civ.P. 4(d), within sixty days after the date on which the request for waiver of service was sent or fifteen days from the date of this Order, whichever is later.  The defendants waived service of the summons and complaint, thus their response was due at the latest sixty days after the date the request for waiver of service was sent.  The request for waiver of service was sent to the defendants on October 18, 2004. *See Doc. 20.*  Thus, the defendants' response was due on or before December 17, 2004.  The defendants did not file their response until December 22, 2004.  The defendants response was filed late.  However, the plaintiffs have not alleged or shown that they have been prejudiced by the defendants' response being filed a few days late.  Accordingly, we will not deem the

defendants to have waived their right to contest the plaintiffs' motions.

In order to obtain a preliminary injunction, the moving party must show: (1) a reasonable probability of success on the merits of the litigation and (2) that the movant will be irreparably injured pendente lite if relief is not granted. *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). "Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court 'should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.'" *Acierno v. New Castle County*, 40 F.3d 645, 652 (3d Cir. 1994)(quoting *Delaware River Port Auth v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 920 (3d Cir. 1974)).  The determination of whether a preliminary injunction should be issued depends on a balancing of these factors. *Punnett, supra*, 621 F.2d at 582. "Furthermore, when the preliminary injunction is directed not merely at preserving the status quo but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Id.*

11

We conclude that the plaintiffs can not establish that they will be irreparably injured if a preliminary injunction is not granted.

The crux of the plaintiffs' motion is their claim that they are in imminent danger of being assaulted. *See Doc.25 - Reply Brief* at p.2 ("It is to be noted that plaintiff only seek relief from imminent danger of <u>assault</u>, not from religious, threats, poisoning, yard and shower, or false charges of misconduct issues."). The only evidence that the plaintiffs have presented is their declaration. In the declaration, Bronson states that defendant Leedom continues to assault prisoners and is working his way to the plaintiffs. However, the defendants have presented evidence that defendant Leedom is no longer assigned to the SMU. *Leedom Decl.* at ¶2. Since defendant Leedom is no longer assigned to the SMU the plaintiffs can not show that he is a threat to them. Although the plaintiffs assert that other SMU guards have taken up a campaign of harassment against them, those guards are not named and the plaintiffs have not presented evidence that they are in imminent danger from any of the named defendants in this case. Accordingly, the plaintiffs' request for a preliminary injunction in the form of an order directing the defendants to

12

install recording cameras in the SMU and to transfer the
plaintiffs to another prison until such time as cameras are
installed in the SMU should be denied.

The plaintiffs are also seeking an order directing the
defendants to allow them consultation time in the law library
at least once a week.  However, prisoners do not have a free-
standing constitutional right to assist each other with legal
claims. *Shaw v. Murphy*, 532 U.S. 223 (2001).  Accordingly, the
plaintiffs' request for a preliminary injunction in the form of
an order directing the defendants to allow them consultation
time in the law library should be denied.

The plaintiffs are also seeking an order directing the
defendants to return to plaintiff Bronson his two boxes of
legal materials.  Bronson contends that he has civil and
criminal matters pending in a number of courts and that his
access to the courts is being obstructed by the withholding of
his property.

A court may not grant a preliminary injunction when the
issues raised in the motion are entirely different from those
raised in the complaint.  *Stewart v. United States Immigration*

13

*and Naturalization Service*, 762 F.2d 193, 198-99 (2d Cir.
1985). *See also Kaimowitz v. Orlando*, 122 F.3d 41, 43 (3d Cir.
1997).

The plaintiffs have not established that the seizure of
Bronson's property has hindered their ability to proceed with
this case, and the plaintiffs have not raised an access to the
courts claim in their complaint.  Accordingly, the plaintiffs'
request for a preliminary injunction in the form of an order
directing the defendants to return to Bronson his two boxes of
legal materials should be denied.

Based on the foregoing, it is recommended that the
plaintiffs' motions (docs. 13, 17 & 23) for preliminary
injunctive relief be denied and that the case file be remanded
to the undersigned for further proceedings.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  January 27, 2005.