UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PURCELL BRONSON and | : CIVIL NO: 3:CV-04-01899 |
| LEON HARRIS, | : |
| Plaintiffs, | : (Judge Caputo) |
| v. | : |
| | : (Magistrate Judge Smyser) |
| C.O. LEEDOM, C.O. MARTIN, | : |
| C.O. SNOOK and SGT. KLINEDINST | : |
| Defendants | : |

**<u>ORDER</u>**


On August 23, 2004, plaintiffs Purcell Bronson and Leon
Harris, state inmates proceeding *pro se*, commenced this 42
U.S.C. § 1983 action by filing a complaint.


The plaintiffs are incarcerated at the State
Correctional Institution at Camp Hill (SCI-Camp Hill).  The
defendants named in the complaint are Secretary Jeffrey Beard,
Corrections Officer Leedom, Corrections Officer Martin,
Corrections Officer Snook and Sergeant Klinedinst.


The plaintiffs allege the following facts in their
complaint.  On July 13, 2004, defendant Martin stated to
plaintiff Bronson that he would get him back because Bronson
had filed two grievances against him.  On July 15, 2004,

defendant Martin's partner, defendant Leedom, issued Bronson a
fraudulent misconduct report.  Defendant Leedom stated that he
was issuing the misconduct because it would be too obvious if
defendant Martin were to do so.  Defendant Leedom further
stated that "we're going to make your life hell, you'll never
graduate from this program."

On or about July 16, 2004, defendant Leedom handcuffed
plaintiff Bronson during shower time and stated that he was
going to give him a shower.  Defendant Leedom made Bronson face
the wall and ran his night stick across Bronson's buttocks and
struck Bronson's testicles causing Bronson substantial pain.
Defendant Leedom stated "remember New York."  Bronson took that
statement as a reference to an incident in New York where
police stuck a plunger up a man's rectum.  Bronson did not
bring this incident to the attention of prison officials
because he was afraid that the situation would worsen.

On July 22, 2004, a disciplinary hearing was held
concerning the miscount report issued by defendant Leedom to
plaintiff Bronson.  The Hearing Examiner denied Bronson's
request to have an inmate who would have corroborated Bronson's
version of the events testify.  Bronson was sentenced to 45

2

days in the Restricted Housing Unit.  Bronson describes his
sentence in the Restricted Housing Unit as imposing an atypical
and significant hardship on him.

On July 25, 2004, defendant Martin resumed harassing
plaintiff Bronson by refusing to feed Bronson breakfast and
lunch.  Defendant Martin stated that it was just a matter of
time before Bronson would be found "swinging like prisoner
Kenneth Miller" with a noose around his neck, handcuffed and
shackled.  Defendant Martin further stated to Bronson that this
is Klan country, that we stick together here, that he doesn't
like smart ass black niggers, and that we are going to break
your ass real soon.  Bronson perceived those statements as a
threat to kill him.  Bronson alleges that he fears for his life
and that everytime the defendants pass his cell he expects them
to enter the cell and beat him to death.

Plaintiff Bronson is being fed only one meal a day.
Bronson alleges that the defendants are refusing to feed him so
that, as they say, he will be too weak to fight back when the
time comes.

Plaintiff Bronson is not receiving showers or exercise. Defendant Klinedinst stated to Bronson "if you go to the yard I'm going to fuck you up."  On July 26, 2004, defendant Snook obstructed Bronson's outdoor exercise by stating: "If you come out I'm going to punch you in the face.  Anytime I'm working, I'm going to get you.  I know you wrote my partner Martin up. I don't like that."   The plaintiffs allege that the defendants have assaulted numerous inmates when the inmates come in from the yard and are handcuffed behind their backs.

The plaintiffs allege that the defendants and/or John Does have twice assaulted plaintiff Harris, once on June 17, 2004 and a second time on June 18, 2004.  Plaintiff Harris is co-plaintiff in the case of *Bronson v. Horn*, No. 3:CV-03-0130 (M.D.Pa.).   Plaintiff Harris was told by John Doe guards: "We know Bronson is coming, let this be a warning to you and him, what to expect if you both keep litigating.  The next time we are going to kill both of you and cover it up, so think about that."

The plaintiffs allege that there are cameras in all other solitary confinement units within the Department of Corrections except the solitary confinement unit at SCI-Camp

4

Hill, and that the lack of a camera at SCI-Camp Hill allows
brutality and racism to run rampant.

The plaintiffs allege that they can not file any more
grievances because to do so would result in a beating.  The
plaintiffs allege that they believe their lives are in danger
from the defendants and their agents.

The plaintiffs allege that the defendants have bragged
that their conduct was in accord with defendant Beard's
policies, practices and procedures to break prisoners.

The plaintiffs claim that the defendants' actions
violated their rights under the First, Eighth and Fourteenth
Amendments of the United States Constitution.  The plaintiffs
are seeking declaratory relief as well as injunctive relief
requiring the defendants to install cameras at SCI-Camp Hill
and to transfer them to another prison with cameras until such
time as cameras are installed at SCI-Camp Hill.

By an Order dated October 7, 2004, all claims against
defendant Beard were dismissed.  On December 17, 2004, the
remaining defendants filed an answer to the complaint.

5

On February 24, 2005, plaintiff Bronson filed a motion
to compel discovery and a brief in support of that motion.
After requesting and receiving an extension of time, the
defendants filed a brief in opposition to the motion to compel
on March 28, 2005.  On April 8, 2005, plaintiff Bronson filed a
reply brief in support of his motion to compel.

Federal Rule of Civil Procedure 26(b)(1) provides, in
pertinent part:

> Parties may obtain discovery regarding any
> matter, not privileged, that is relevant to the
> claim or defense of any party, including the
> existence, description, nature, custody,
> condition, and location of any books, documents
> or other tangible things and the identity and
> location of persons having knowledge of any
> discoverable matter.  For good cause, the court
> may order discovery of any matter relevant to
> the subject matter involved in the action.
> Relevant information need not be admissible at
> the trial if the discovery appears reasonably
> calculated to lead to the discovery of
> admissible evidence.

The discovery rules "are to be accorded a broad and
liberal treatment to effect their purpose of adequately
informing the litigants in civil trials." *Herbert v. Lando*, 441
U.S. 153, 177 (1979).  When relevance is in doubt the court
should be permissive in allowing discovery. *Heat & Control,*

6

*Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed.Cir. 1986).

Bronson's motion to compel concerns nine interrogatories from his first set of interrogatories. The defendants objected to those nine interrogatories.

We will first address Interrogatories 7, 9 and 13.

Interrogatory 7 asks: "Pursuant to the DOC computerized tracking program on the institution level of non-abuse grievances DC-ADM 804, how many grievances have been filed against each respondent?" Interrogatory 9 asks: "Has any defendant received reprimands or sanctions in regards to their duties and functions at anytime?" Interrogatory 13 asks: "How many DC-ADM 141 Reports were written by each defendant against SMU prisoners, since its inception?" The defendants objected to Interrogatories 7, 9, & 13 as overbroad and not relevant to the claims in this case.

We agree with the defendants that since Interrogatories 7, 9 & 13 are not limited to a specific time frame, they are overbroad. Moreover, as to Interrogatories 7 & 13 it is not

7

apparent to the court how knowing the number of grievances filed against the defendants and the number of DC-ADM 141 reports written by the defendants against SMU prisoners is relevant to the claims in this case or that knowing such numbers is reasonably calculated to lead to the discovery of admissible evidence.  Bronson states that the answers to those interrogatories will show that the defendants' acts are widespread, that they acted as alleged, that they falsify reports and that their actions are consistent with their history and pattern of such conduct and abuse.  However, simply knowing the number of grievances filed against the defendants and the number of DC-ADM 141 reports written by the defendants against SMU prisoners without knowing the underlying circumstances of the grievances or reports does not show anything about the defendants' actions in this case. Accordingly, we will not grant Bronson's motion to compel as to Interrogatories 7, 9 & 13.

Next, we will consider Interrogatories 10, 11 & 12.

Interrogatory 10 asks: "How many assaults on prisoners were committed by any defendant?"  Interrogatory 11 asks: "How many assaults on defendants, were committed by prisoners?"

Interrogatory asks: "How many prisoners have died while housed in the SMU?"  The defendants objected to Interrogatories 10, 11 & 12 as not relevant to the claims in this case.

Again it is not apparent to the court how knowing merely the number of assaults by or against the defendants or the number of prisoners who have died while in the SMU is relevant to the claims in this case or that knowing such numbers is reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, we will not grant Bronson's motion to compel as to Interrogatories 10, 11 & 12.

Next we address Interrogatories 16 & 20.

Interrogatory 16 asks: "As stated in plaintiff Bronson's 17X file at the SMU at SCIC, on what shift did plaintiff fail to stand count, and who was the guard who made the count?  Interrogatory 20 asks: "In reference to plaintiff Bronson's 17x file at the SMU at SCIC, what order was given, by who, and, when did he refuse to obey any order?"  The defendants objected to Interrogatories 16 & 20 as not relevant to the claims in this case.

Bronson contends that Interrogatories 16 & 20 are
relevant because the defendants use the 17x form to note false
statements to guarantee, as they say, that he will not graduate
from the SMU program.  Bronson also contends that the 17x form
is used against him at his hearings for promotion.  Although
certain portions or entries on Bronson's 17x record may be
relevant in this case, Bronson has not limited his request to
certain dates or ranges of dates or to entries written by the
defendants.  Without dates or some other limitation, it is not
clear what the plaintiff is asking for and, therefore, we can
not determine if what the plaintiff is asking for is relevant
to the claims in this case.  Accordingly, we will not grant
Bronson's motion to compel as to Interrogatories 16 & 20.

Finally, we address Interrogatory 18, which asks: "Is
any defendant's sexual persuasion that of homosexuality?"  The
defendants objected to this interrogatory on the grounds that
it is intended to embarrass and annoy.   The defendants contend
that there is nothing in the allegations of the complaint that
make a defendant's sexual orientation relevant to the
plaintiff's claims and that, therefore, Interrogatory 18 has no
purpose other than to embarrass or annoy the person to whom it
is directed.

10

Bronson states that defendants Martin and Leedom have been caught holding hands and that he has come into information that defendants Martin and Leedom are domestic partners. Bronson contends that defendants Martin and Leedom dislike him because the victim in his homicide case was a gay individual and it is for this reason that they single him out for harassment.

Despite the plaintiff's contentions regarding defendants Martin and Leedom, Bronson has not shown that whether or not any of the defendants are homosexual is relevant to the claims in this case or that knowing whether any of the defendants are homosexual is reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, we will not grant Bronson's motion to compel as to Interrogatory 18.

**IT IS ORDERED** that the plaintiff Bronson's motion (doc. 29) to compel discovery is **DENIED**.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  June 15, 2005.

11